UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

TRAVIS E. HUNT,           )
   Plaintiff,             )
                          )
vs.                       )   Case No. 22-3120
ROB JEFFREYS, et. al.,    )
   Defendants             )

MERIT REVIEW ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for merit review of the Plaintiff's complaint and consideration of his motion for emergency injunctive relief. [1, 4]. The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff, a pro se prisoner, has identified the following Defendants: Illinois Department of Corrections Director Rob Jeffreys, Lincoln Correctional Center Warden Tiona Farrington, Major John Doe, Counselor P. Long, Dietary Supervisor Tanner, Counselor Matt Spencer, unknown correctional officers, and the Illinois Department of Corrections (IDOC).

Plaintiff says he tested positive for COVID-19 when he was incarcerated in the Champaign County Jail in January of 2022. Plaintiff transferred to Graham Correctional

1

Center in April of 2022, and then to Lincoln Correctional Center on May 18, 2022.

Plaintiff's complaint focuses on a variety of issues at Lincoln including:

1) Officers either don't wear face masks or don't wear them properly.

2) Plaintiff was advised unvaccinated inmates are required to take a weekly COVID-19 test. Plaintiff refused and alleges Defendant Major John Doe unconstitutionally discipled Plaintiff for failing to follow a direct order. Plaintiff says he has a right to refuse testing without facing time in segregation. Plaintiff was in segregation for approximately 8 days.

3) The anti-bacterial soap dispenser in the communal bathrooms is not refilled.

4) Plaintiff asked for cleaning supplies because his cell was dirty, but he did not receive any supplies until the next shift.

5) The facility dishwasher is broken, so inmates are handwashing all dishes. Plaintiff says the "water is not tested everyday to make sure it has the correct bleach to water ratio," so the dishes are not properly sanitized. (Comp., p. 6).

6) The housing unit is full even though there is a potential threat of contracting COVID.

7) Housing units were placed on lockdown due to COVID-19 in June of 2022. Plaintiff claims inmates with symptoms did not immediately receive the test, nor were they immediately isolated.

8) During quarantine, inmates were not given disposable silverware or food trays.

9) Inmates who test positive for COVID-19 are allowed to stay on the unit to pack their belongs before they moved.

10). An unnamed counselor refused to provide Plaintiff with an application for electronic monitoring. Plaintiff was told he would need to demonstrate he was eligible pursuant to state statute, 730 ILCS 5/5-8A-3(e).

11) Plaintiff says when he does submit to a Covid-19 saliva test, it is an unlawful seizure of his DNA.

12) Plaintiff says the IDOC Director's testing policy poses a threat to him since he has asthma and hypertension and vaccinated inmates are not required to take routine COVID tests.

Plaintiff has then attached approximately 40 pages of exhibits including the relevant IDOC policy which states unvaccinated individuals are subject to routine testing, and unvaccinated inmates who refuse testing will be quarantined for an additional seven days until they are medically cleared. (Comp., p. 23). However, fully vaccinated staff and inmates "who do not have symptoms and no known exposure to someone with suspected or confirmed COVID-19" are exempt from routine testing unless there is a facility outbreak. (Comp., p. 17).

There are several problems with Plaintiff's complaint. First, Plaintiff does not mention each of the named Defendants in the body of his complaint, or how they were involved in his claims. *See Kuhn v. Milwaukee County*, 59 F. App'x 148, 150 (7th Cir. 2003) (merely naming defendants in the caption of a complaint does not state a claim against them); *Potter v. Clark,* 497 F. 2d. 1206, 1207 (7th Cir. 1974)(district court properly dismissed *pro se* complaint where it alleged no specific conduct by the defendant and only included the defendant's name in the caption). Even if Plaintiff is unaware of some of the Defendants names, he must specifically allege when and how they violated his constitutional rights.

Second, Plaintiff has not articulated a constitutional violation based on his potential exposure to the COVID-19 virus as Plaintiff has not alleged he suffered any harm. "The Seventh Circuit recently reiterated the necessity of an actual injury to

sustain a suit under § 1983." *Bolden v. Mezo Stallins*, 2022 WL 479797, at *6 (S.D. Ill. Feb. 16, 2022). In *Lord v. Beahm*, the Seventh Circuit noted an inmate's "claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without developing evidence of a recoverable injury." *Lord*, 952 F.3d 902, 905 (7th Cir. 2020). A plaintiff cannot recover money damages without a showing of some type of harm. *Id.; see also Walker v. Leibert*, 844 F. Appx 920, 922 (7th Cir. 2021)("to the extent [Plaintiff] seeks damages based on the risk of what *could have* happened to him as a result, that risk is not actionable under § 1983 without actual injury."); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019)("In order to succeed in a § 1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.")(quotation marks and citation omitted); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("Section 1983 is a tort [and] [a] tort to be actionable requires injury.").

Plaintiff suffered with COVID-19 prior to his incarceration at Lincoln, but claims he fears "contracting it again." (Comp., p. 5). Plaintiff does not believe Lincoln Correctional Center follows proper protocols to protect him based on the failure to wear masks, failure to avoid maximum occupancy, failure to require vaccinated individuals to be tested, failure to keep soap dispensers full, failure to quickly move positive inmates, etc. Nonetheless, Plaintiff does not claim he ever had the virus at Lincoln. *See Henry v. Deshler*, 2021 WL 2838400, at *2 (7th Cir. 2021) ("claim of deliberate indifference cannot be based on a risk that never came to pass."); *Lee v. Chak*, 2022 WL 1451666, at

*2–3 (W.D.Wis. May 9, 2022(although inmate was housed with cellmate who tested positive for COVID, plaintiff failed to allege he suffered any harm); *Shaw v. Kemper*, 2021 WL 5493937, at *4 (E.D.Wis.Nov. 23, 2021)(Plaintiff fails to state a claim based on exposure to COVID which did not result in any injury); *see also Lee v. Doe*, 2022 WL 204355, at *4 (S.D.N.Y. Jan. 24, 2022)("Courts have routinely dismissed claims such as Plaintiff's for lack of standing based on the absence of injury in fact.")(listing cases); *Balas v. Stanish*, 2021 WL 5500512, at *4 (M.D.Pa.Nov. 23, 2021)(" Missing here is any allegation of actual injury attributed to Defendants' alleged placing of (plaintiff) in proximity with (COVID) infected inmates.")((listing cases). The Court also notes Plaintiff appears to hold the nonsensical position that Defendants place him at risk of contracting COVID, but he is not vaccinated and has refused routine testing to check on his status.

    Third, Plaintiff has not articulated a claim based on his living conditions. The Eighth Amendment requires prisoner officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish a constitutional violation, a plaintiff must demonstrate "(1) there was a deprivation that was objectively serious enough that it resulted in the denial of the minimal civilized measure of life's necessities, and (2) prison officials were deliberately indifferent to the deprivation." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (internal quotations omitted).  In other words, the Eighth Amendment "does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only [to] that narrow class of

deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996), *quoting Hudson v. McMillian*, 503 U.S. 1, 19 (1992); *see also Truidalle v. Taylor*, 2011 WL 6780690, at *4 (N.D.Ill. Dec. 23, 2011)("[s]ubstandard living conditions do not necessarily equal unconstitutional conditions."). A short delay in providing cleaning supplies or failing to test dishwashing water does not rise to the level of a constitutional violation.

Fourth, Plaintiff fails to state a claim based on his short stay in either quarantine status or segregation after he refused routine testing. "Segregation does not implicate a liberty interest unless the length of confinement is substantial and the 'record reveals that the conditions of confinement are unusually harsh.'" *Smith v Birkey*, 447 Fed.Appx. 744, 746 (7th Cir. 2011) *citing Marion v Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009)("six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights."). Plaintiff's eight day stay in segregation fails to state a constitutional violation.

Fifth, Plaintiff has failed to state a claim based on an "unconstitutional seizure" of his DNA. (Comp, p. 7). Plaintiff admits the test is for exposure to COVID-19. In addition, Plaintiff has failed to state a claim based on the failure to provide him with an application for electronic monitoring. This claim is not reasonably related to Plaintiff's other allegations, and Plaintiff has failed to allege he followed the directions provided to demonstrate he was eligible for electronic monitoring.

None of Plaintiff's allegations articulate a constitutional violation and therefore the Court must dismiss his complaint. In addition, it does not appear that Plaintiff's

exhausted his administrative remedies as required before filing his complaint. *See* 42 U.S.C. §1997e(a). IDOC's established grievance procedures state an inmate may appeal the Chief Administrator's response to a grievance by sending the appeal to the Administrative Review Board (ARB) within 30 days. 20 Ill. Admin. Code § 504.850(a). The Director shall then review the findings and recommendations of the board and make a final determination within six months after receipt of the grievance. 20 Ill. Admin. Code § 504.850(f). The grievance procedure is complete when an inmate has received the ARB's response

Plaintiff submitted grievances dated May 25, 2022 and May 26, 2022. (Comp., p. 23, 28, 31). Each grievance was considered and denied. The Chief Administrative Officer concurred with the results on June 21, 2022 and June 29, 2022 (Comp, p. 25, 30). Plaintiff marked each grievance noting his intention to appeal to the Administrative Review Board. In addition, Plaintiff has provided a copy of the letter he sent to the ARB on June 29, 2022 addressing his grievances. (Comp., p. 27). However, rather than wait for an ARB response, Plaintiff filed his complaint approximately one week later on July 8, 2022. [1]. Therefore, Plaintiff did not fully exhaust his administrative remedies.

IT IS THEREFORE ORDERED:

1) Plaintiff's complaint is dismissed pursuant to 28 U.S.C. §1915A for failure to clearly articulate a claim upon which relief could be granted and failure to exhaust administrative remedies before filing his complaint. All motions are denied as moot. [3, IFP; 4 TRO]. The case is closed as any amendment would be futile.

2) This dismissal shall count as one of the Plaintiff's three allotted strikes pursuant to 28 U.S.C. Section 1915(g). The clerk of the court is directed to record the Plaintiff's strike in the three-strike log.

3) If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* MUST set forth the issues the Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the Plaintiff does choose to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal.

Entered this 11th day of July, 2022.

s/ James E. Shadid

_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE